Tiffine E. Malamphy (CA SBN 312239)
**LYNCH CARPENTER, LLP**
117 E. Colorado Blvd., Suite 600
Pasadena, CA 91105
Tel:    (213) 723-0707
Fax:   (858) 313-1850
tiffine@lcllp.com

Connor P. Hayes (*pro hac vice* forthcoming)
**LYNCH CARPENTER, LLP**
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone:   (412) 322-9243
Facsimile:   (412) 231-0246
connorh@lcllp.com

*Attorneys for Plaintiff*
*and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ASHLEY POPA, on behalf of her minor children, J.D. and J.D., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DISNEY WORLDWIDE SERVICES, INC.; DISNEY ENTERTAINMENT OPERATIONS LLC; and THE WALT DISNEY COMPANY,<br><br>Defendants. | Case No.: 2:25-cv-9390<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Invasion of Privacy – Intrusion Upon Seclusion;<br>2. Trespass to Chattels;<br>3. Negligence;<br>4. Unjust Enrichment;<br>5. Violation of the Video Privacy Protection Act;<br>6. Violation of the Federal Wiretap Act; and<br>7. Violation of the Pennsylvania Wiretap Act.<br><br>**DEMAND FOR JURY TRIAL** |

Minor Plaintiffs J.D. and J.D., by and through their guardian Plaintiff Ashley Popa and undersigned counsel, file this Class Action Complaint individually and on behalf of a class of all similarly situated persons against Defendants Disney Worldwide Services, Inc., Disney Entertainment Operations LLC, and The Walt Disney Company (collectively, "Disney" or "Defendants"). Plaintiffs base the following allegations upon information and belief, investigation of counsel, and their own personal knowledge.

## I.    NATURE OF THE ACTION

1.    Plaintiffs bring this class action individually and on behalf of all other individuals who had their privacy invaded by Disney's intrusive and unlawful business practices of enabling the collection of personal information from millions of children under the age of 13 in the United States, without providing notice to parents or obtaining verifiable parental consent.

2.    Disney is a worldwide media conglomerate that produces and distributes highly popular child-directed content, including through its official channels on YouTube, a video-sharing platform owned by Google LLC ("Google").

3.    Since 2019, Disney has failed to designate its animated videos, cartoons, movie clips, and other content clearly aimed at children under 13 as "made for kids" on YouTube.

4.    Disney's failure to designate its videos as "made for kids" has allowed the collection of personal data from children, including persistent identifiers (like cookies and device IDs) and sensitive information (such as identity and location), all without notifying parents or securing verifiable parental consent.

5.    Disney thereby generates substantial advertising revenue from opening up its audience of millions of children under the age of 13 to YouTube's targeted advertising algorithm.

6.    Disney's conduct illegally invades the privacy of millions of children

in the United States, and it violates an array of federal and state statutes protecting children and consumers.

7.    Minor Plaintiffs bring claims on behalf of themselves and all other similarly situated children under the age of 13 injured by Disney's misconduct.

## II.    PARTIES

8.    Minor Plaintiffs and their guardian, Ashley Popa, are American citizens and residents of Pennsylvania. On various dates between 2019 and the present, Plaintiffs watched child-directed content uploaded by Disney on the YouTube platform.

9.    Upon information and belief, Plaintiffs viewed videos that Disney did not designate as "made for kids" over several years. As a result, Plaintiffs' data was collected and exploited for targeted behavioral advertising. Plaintiffs' guardian was never notified that Disney had enabled the collection of her children's personal information for the purpose of targeted behavioral advertising. Plaintiffs' guardian never provided consent of any kind for her children's information to be collected and used for targeted behavioral advertising on the YouTube platform. Plaintiffs' guardian significantly values her children's privacy and would not have consented to the collection of her children's data on Disney channels. Plaintiffs' guardian would not have permitted her children to access YouTube had she known that Disney was not abiding with internet laws designed to protect children.

10.    Defendant The Walt Disney Company ("TWDC") is a Delaware corporation with a principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

11.    Defendant Disney Worldwide Services, Inc. ("Disney Worldwide") is a Florida corporation with its principal place of business at 1375 Buena Vista Drive, Lake Buena Vista, Florida 32830, and which maintains corporate offices in California at 500 South Buena Vista Street, Burbank, California 91521. Disney

Worldwide is a wholly owned subsidiary of TWDC and serves as a central business and administrative services provider for TWDC's various media and entertainment subsidiaries.

12. Defendant Disney Entertainment Operations, LLC ("Disney Entertainment") is a Florida limited liability company, with its principal place of business at 500 Buena Vista Street, Burbank, California 91521. Disney Entertainment is primarily responsible for the creation, distribution, and monetization of Disney's entertainment content, including video programming made available on platforms such as YouTube.

13. Disney Worldwide and Disney Entertainment are agents and instrumentalities of the TWDC and operate under its direction and control.

## III. JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, because Plaintiffs and at least one member of the Class, as defined below, are citizens of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

15. This Court has general personal jurisdiction over Defendants because TWDC and Disney Entertainment are both citizens of the State of California.

16. This Court has specific personal jurisdiction over Defendants because Defendants transact business in California and Plaintiffs' claims arise out of Defendants' California activities.

17. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1), because at least one Defendant resides in this District, a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District; and Defendants conduct substantial business within this District.

## IV.   FACTUAL BACKGROUND

18.    TWDC operates as one of the world's largest media and entertainment conglomerates through numerous subsidiaries, including Disney Worldwide and Disney Entertainment.

19.    Disney has built a media empire based on content that is specifically made for children, including the use of globally recognized characters, franchises, and branded content including Disney Princesses, Pixar, Marvel, and Star Wars.

20.    Disney's business model depends on capturing and monetizing children's attention across multiple platforms, including television, streaming, merchandise, theme parks, and digital media.

21.    Central to this strategy is engaging, child-directed content designed to attract and retain young viewers, often without meaningful parental oversight, which allows Disney to generate billions in revenue annually through advertising, licensing, and data-driven marketing.

### A. THE YOUTUBE PLATFORM

22.    As part of Disney's media strategy, Disney maintains a direct and lucrative commercial relationship with YouTube, an online video-sharing platform and subsidiary of Google, where users can view videos or upload video content.

23.    YouTube videos are viewable by anyone who accesses YouTube by visiting www.youtube.com or using the YouTube mobile or streaming device app. YouTube does not require individuals to register or sign into its site to watch videos.

24.    YouTube requires that videos intended to be available to the public be uploaded through a channel.

25.    Each channel has a unique account and serves as a personalized space where a particular content creator's videos, playlists, branding, and audience engagement tools are hosted.

26.    Content creators like Disney have full control over the videos they

upload to their channels, including the ability to set titles, thumbnails, descriptions, age designations, and monetization preferences.

27.     Users may find videos on YouTube by navigating to a particular channel's homepage, or users may come across videos uploaded to a particular channel without interacting directly with that channel.

### B. YOUTUBE'S DATA COLLECTION AND AD-TARGETING PRACTICES

28.     YouTube operates on an advertising-supported model. Ads displayed before, during, and alongside YouTube videos generate the vast majority of revenue for YouTube and its content creators.

29.     Content creators who upload videos on YouTube, like Disney, also financially benefit from this advertising revenue through the YouTube Partner Program, a monetization agreement that allows eligible content creators to receive a significant share of advertising revenue generated from videos of their content on YouTube, including pre-roll, mid-roll, banner, and targeted display advertisements.

30.     Advertising on YouTube can target users using either contextual or behavioral targeting.

31.     Contextual targeting is the delivery of advertisements to individuals based on the type of content that the user is consuming, as opposed to the specific viewer who is watching it. For example, an advertiser might promote cookware on a recipe blog.

32.     Behavioral targeting is the delivery of advertisements to individuals based on that user's viewing history and personal information, which YouTube can track across multiple websites, apps, and devices. YouTube and content creators like Disney prefer behavioral advertising because it is generally regarded as more effective, and thus more lucrative, than contextual targeting.

33.     To facilitate behavioral targeting, YouTube collects personal information from individuals who access YouTube. That personal information

includes a person's YouTube viewing history, user activity (searches run, views and interactions with content and ads, etc.), location information (GPS, internet protocol ("IP") address, device sensor data, and data from devices located near a user), and unique identifiers (cookie IDs, advertising IDs, device IDs, and others). That data is collected and stitched into a profile of a user which gives YouTube (and whoever YouTube shares that information with, including advertisers) the most accurate, up-to-date snapshot of a user's preferences, interests, attributes, and behaviors.

34.    The information YouTube collects is incorporated into an algorithm which infers which types of advertisements are likely to have the greatest impact on the user associated with the information (i.e., are most likely to be clicked on).

35.    Advertisers pay YouTube more to run behavioral advertising, and YouTube in turn pays content creators, including Disney, more for running behavioral advertising on a channel than YouTube would have paid a creator like Disney for only allowing contextual advertising.

36.    YouTube's collection of viewing history and personal information from users, and identification of preferences inferred from their profiles, is therefore essential to earn more advertising revenue.

## C. DISNEY'S PRESENCE ON YOUTUBE

37.    Disney operates various official channels on YouTube, including Disney Channel, Disney Junior, Disney Kids, Disney Animation Studios, Disney Parks, Pixar, and many franchise-specific channels.

38.    Disney has uploaded tens of thousands of videos for consumers to view on YouTube, and many of those videos are extremely popular. According to a Federal Trade Commission complaint filed against Disney, videos on just three dozen of Disney's channels resulted in tens of millions of hours watched worldwide and hundreds of millions of views in the United States in just three months of 2019. During three months of the early COVID-19 pandemic period of 2020, viewing time

soared to over 100 million hours worldwide, with approximately 1.2 billion views in the United States alone.[1]

39.    Children are easily able to find and view Disney content on YouTube through YouTube's search function, autoplay suggestions, and algorithmically driven recommendations, which promote similar or related content.  Young children frequently access this content directly through the search feature, or indirectly through embedded videos available on the YouTube app and other media.

40.    During the period from 2019 through the present ("Class Period"), Disney operated and uploaded videos to more than 1,250 YouTube channels.

41.    Disney's presence on the YouTube platform allows it to generate substantial revenue from targeted advertising and collect significant personal information from its users through the YouTube Partner Program.

42.    As a partner with YouTube, Disney also has access to YouTube's content management, audience analytics, and monetization tools including settings related to behavioral advertising and indicating whether content is directed at children under the age of 13.

43.    These tools allow Disney to benefit from and indirectly access the personal data, especially viewing history and other behavioral data, that YouTube collects from viewers, including children.

44.    Indeed, given the lucrative value of behavioral advertising revenue, as noted above, Disney has a strong financial incentive to allow YouTube to collect viewing history data and personal information from users, including children under the age of 13, in order to develop detailed profiles about these users, facilitate

---

[1] Complaint for Permanent Injunction, Civil Penalty Judgment, and Other Relief, *United States v. Disney Worldwide Servs.*, No. 2:23-cv-8223 (C.D. Cal. Sep. 2, 2025), Dkt. No. 1, *available at* https://www.ftc.gov/system/files/ftc_gov/pdf/DisneyComplaint.pdf.

behavioral advertising on its videos, and reap greater profits from its YouTube presence.

### D. THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT ("COPPA")

45.     In order to prevent this type of invasive collection of children's personal information, Congress passed the Children's Online Privacy Protection Act ("COPPA") in 1998 to prohibit the unauthorized or unnecessary collection of children's personal information online by operators of Internet websites and online services. COPPA directed the Federal Trade Commission (the "FTC") to promulgate a rule implementing COPPA. The FTC promulgated the COPPA Rule on November 3, 1999, under Section 1303(b) of COPPA, 15 U.S.C. § 6502(b), and Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553. The Rule went into effect on April 21, 2000. The FTC promulgated revisions to the Rule that went into effect on July 1, 2013. Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

46.     The Rule applies to any operator of a commercial website or online service directed to children that collects, uses, and/or discloses personal information from children, and to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children. The Rule requires an operator to meet specific requirements prior to collecting online, using, or disclosing personal information from children, including but not limited to:

> a. Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents (Section 312.4(b) of the Rule, 16 C.F.R. § 312.4(b));
>
> b. Posting a prominent and clearly labeled link to an online notice of

its information practices with regard to children, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth in the Rule (Section 312.4(d) of the Rule, 16 C.F.R. § 312.4(d)); and

    c.  Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children (Section 312.5(a)(1) of the Rule, 16 C.F.R. § 312.5(a)(1)).

47.    The law defines "personal information" broadly to include not only names and contact details but also persistent identifiers such as cookies, IP addresses, device IDs, and other tracking technologies used for behavioral advertising.

48.    The FTC, which enforces COPPA, has made clear that COPPA applies not only to websites and apps that are directed to children, but also to general-audience platforms—like YouTube—when they have actual knowledge that child-directed content is being hosted.

49.    COPPA reflects a strong policy interest in shielding children from invasive data practices and commercial exploitation, and violations of the statute can result in significant civil penalties and injunctive relief.

### E. COPPA ENFORCEMENT AGAINST YOUTUBE

50.    In 2019, the FTC brought an enforcement action against YouTube and its parent company, Google, for violating COPPA. The FTC alleged that YouTube knowingly collected personal information about children through personal identifiers that are used to track users across the internet, without first notifying parents and getting their consent.

51.    The complaint specifically cited YouTube's and its content creators' practice of hosting and profiting from child-directed content and channels.

52.    As part of the FTC settlement, YouTube agreed to pay a then-record $170 million fine and implement systemic changes to its platform, including requiring content creators, such as Disney, to designate whether the videos being uploaded are "made for kids."

53.    The FTC action made clear that both platform operators and content creators share responsibility under COPPA for protecting children's privacy, especially when monetizing child-directed content through advertising and data collection practices.

54.    In November 2019, YouTube directed Disney and other content creators that, moving forward, they would be required to inform YouTube whether their content is "made for kids" in order to comply with COPPA.

55.    As part of this requirement, Disney and other content creators can set their entire channel as "made for kids" if much of the content on the channel is targeted towards children using one of the settings for the channel:



10

CLASS ACTION COMPLAINT

56.    A related setting on the same tab within YouTube's channel settings gives content creators like Disney the power to turn off interest-based (i.e. behavioral) advertising, but emphasizes that doing so "may significantly reduce your channel's revenue":



57.    Since 2019, YouTube has relied on content creators' own management of their settings, and designation of their channels and videos as "made for kids" or not, to determine what functionality and advertising YouTube should make available on videos.

58.    When a video (or entire channel) is set as "made for kids," certain functionality on that video is disabled by YouTube, including targeted or personalized advertising and the collection of viewing history and personal information that facilitates targeted and personalized advertising.

59.    Designating a video or channel as "made for kids" also disables the following features:

    a.  Live chat

    b.  Video comments.

    c.  Playback in the Miniplayer, which allows a video to continue to play on a small screen as a user browses YouTube

CLASS ACTION COMPLAINT

d.  Autoplay from the YouTube home screen

e.  Cards or end screens

f.  Video watermarks

g.  The ability to become a channel "member"

h.  A button to solicit donations for a cause

i.  Merchandise and ticketing

j.  Notifications

k.  Super Chat or Super Stickers

l.  "Save to playlist" and "Save to Watch Later" features

60.   In addition to these features being disabled, the designation of a video as "made for kids" also affects the overall function of autoplay on YouTube, when a new video will automatically play when a user has finished watching a video. When a video is marked as "made for kids" it will exclusively autoplay to other videos marked as "made for kids," and will not play videos designated as "not made for kids."

61.   If a content creator like Disney designates an entire channel as "made for kids," these features are disabled on every video for that channel by default, and the content creator would have to manually change this setting for any video that the content creator wanted to designate as not made for kids. Additional channel-related features are also disabled, including notifications, posts, and comments related to the channel's page.

62.   Conversely, if a content creator set an audience at the channel level as "not made for kids," the content creator would have to manually change this setting for any video that the content creator wanted to designate as "made for kids" to comply with COPPA.

63.   The features disabled when a content creator designates a video or channel as "made for kids" are disabled, in part, to prevent the collection of personal

CLASS ACTION COMPLAINT

information from children that would require operators to provide notice and obtain verifiable parental consent under COPPA and the Rule.

64.    When a content creator like Disney does not designate a video as "made for kids," these features will activate, including collection of personal information and viewing history data to enable targeted behavioral advertising directed towards children.

65.    In November 2019, YouTube explicitly warned content creators, including Disney, that failure to set their content accurately may lead to legal liability and compliance issues with the FTC or other authorities.

### F.  DISNEY'S FAILURE TO COMPLY WITH COPPA

66.    Disney had the ability, and a mandatory duty, to designate its videos as "made for kids" under YouTube's compliance framework following the FTC's 2019 COPPA enforcement action.

67.    Disney also had the ability to turn off interest-based (i.e., behavioral) advertising for its videos.

68.    Nevertheless, Disney failed to properly designate its videos and children-directed content on YouTube as "made for kids," and/or failed to turn off interest-based advertising on content directed at children.

69.    Disney operates and uploads videos to channels that it has designated as "made for kids" as well as channels it has designated as "not made for kids." Upon information and belief, per corporate policy, Disney sets the audience designation as either "made for kids" or "not made for kids" at the channel level and does *not* change the designation for individual videos uploaded to each channel under Disney's content umbrella.

70.    Under Disney's channel-level policy, Disney allows the video to remain by default designated as "not made for kids" if that video is uploaded to a

CLASS ACTION COMPLAINT

channel Disney has designated as "not made for kids," even if the video is obviously directed at children.

71.    Disney knowingly fails to make these designations properly for its channels and videos, despite producing and uploading vast amounts of content that is unmistakably directed at children under the age of 13.

72.    Disney's mislabeling of its videos and channels affirmatively allows YouTube to collect personal information from children users of YouTube, generate additional revenue from advertising directed at these child users, and provide Disney with demographic insights and analytics that assist Disney with its targeted advertising; all of this violates COPPA.

73.    Child-directed videos that Disney designated as "not made for kids" include videos available on, among other channels:

       a.  the Pixar channel;

       b.  the Disney Animation Studios channel;

       c.  the Disney Movies channel;

       d.  the Disney on Ice channel;

       e.  the Disney on Broadway channel;

       f.  the Disney Channel channel, which posts video content for Disney's television channel targeted at children ages 6-14;[2]

       g.  the Disney Plus channel, which posts video content from Disney's streaming service;

       h.  the Walt Disney Studios channel, which posts video content from across Disney's various film studios;

---

[2] *Press Release and Fact Sheet*, DISNEY CHANNELS WORLDWIDE (Jan. 2019), https://www.detpress.com/storage/uploads/6C/D1/6CD1F20D-309F-A786-C52E-C515FC8B65A7/press-release-9-165053.pdf.

CLASS ACTION COMPLAINT

i.  the Oh My Disney channel, which formerly posted video content for Disney's official blog; and

j.  the Disney D23 channel, which formerly posted video content related to the official Disney fan club.

74.    Many or all of the videos on these channels are unquestionably directed toward children under the age of 13 based on their visual content, subject matter, music, language and other characteristics.

75.    These videos often include bright, colorful visuals, simple language, sing-along songs, nursery rhymes, basic educational themes, and storylines designed to appeal to preschoolers and early elementary-age viewers.  The videos also frequently feature animated characters like Mickey Mouse, Elsa, Moana, Lightning McQueen, and other iconic figures from Disney's catalog that are specifically marketed to and beloved by young children.

76.    These elements, combined with Disney's iconic branding as a provider of family and children's entertainment, makes it objectively clear that these videos fall squarely within the definition of "child-directed" under COPPA and FTC guidance.

77.    Disney's failure was not accidental or technical; it was a deliberate business decision that prioritized advertising revenue over children's privacy rights.

78.    In June 2020, YouTube notified Disney of over 300 videos that were not appropriately marked "made for kids," despite child-directed subject matters featuring characters from The Incredibles, Coco, Toy Story, Tangled, and Frozen. Although Disney was notified that YouTube was reclassifying these videos as "made for kids," it refused to revise its policy of designating videos based on the channel-level default.[3]

---

[3] Press Release, Fed. Trade Comm'n, *Disney to Pay $10 Million to Settle FTC Allegations the Company Enabled the Unlawful Collection of Children's Personal*

79.    On September 2, 2025, the FTC brought an enforcement action against Disney for violating COPPA by failing to properly mark certain YouTube videos as "made for kids." According to the FTC, this mislabeling, including content from obvious child-directed videos, allowed the collection of personal data from children under 13 years old without verifiable parental notification or consent and enabled targeted advertising through YouTube that is prohibited under COPPA.[4]

80.    FTC chairman Andrew Ferguson condemned Disney's handling of child-directed content on YouTube, stating that the enforcement action "penalizes Disney's abuse of parents' trust[.]"[5]

## G.    DISNEY COLLECTED SENSITIVE, VALUABLE INFORMATION FROM CHILDREN WITHOUT THEIR CONSENT.

81.    While the FTC brought an enforcement action against Disney for its violations of COPPA, this action does not provide compensation or redress for the children and families directly harmed by Disney's misconduct. Minor Plaintiffs' and Class Members' personal information was unlawfully collected and monetized without parental consent. These children suffered concrete and particularized injuries, including the loss of statutory privacy protections, exposure to surveillance and targeted advertisement, and the exploitation of their online behavior in the name of corporate profit.

82.    Disney's failure to accurately designate child-directed videos as "made for kids" results in YouTube collecting personal information and placing targeted advertisements on child-directed videos on Disney's behalf. In addition to targeted

_____

*Data* (Sep. 2, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/09/disney-pay-10-million-settle-ftc-allegations-company-enabled-unlawful-collection-childrens-personal.
[4] *Id.*
[5] *Id.*

advertising, when videos are not properly marked as "made for kids," other features that YouTube routinely disables on "made for kids" videos are available, including the ability to save videos and the ability to comment on videos. YouTube disables features on "made for kids" videos and channels in part because they would rely on the collection of user data to work properly.

83.    Minor Plaintiffs and Class Members were harmed when Disney enabled YouTube to collect their personal information. Reasonable guardians, including the guardian of the Plaintiffs, would not have allowed their children to access Disney channels on YouTube had they been aware of the extent to which children's privacy would be violated as a result.

84.    In today's data-driven attention economy, children's personal information is exceptionally valuable to advertisers. From a young age, children generate "digital footprints," informed by their browsing behavior, viewing habits, device and application usage, preferences, and engagement patterns. Unique identifiers can be used to track a child's behavior across platforms, and data brokers are able to develop detailed profiles and predictive models that enable microtargeting and influence over future customer behavior. Companies use this data to fuel their advertising revenue and shape long-term buying habits and brand loyalty, making children a particularly lucrative and vulnerable target.[6]

85.    Children do not have the same capacity as adults to understand the implications of data collection or targeted marketing, nor can they meaningfully consent to its collection. Indeed, recognizing the sensitivity and value of this data is the reason Congress enacted COPPA.

---

[6] Pulkit Gupta, *The Hidden World of Children's Data: Protecting Their Digital Footprints*, CLOAKED (Sep. 7, 2024), https://www.cloaked.com/post/the-hidden-world-of-childrens-data-protecting-their-digital-footprints.

CLASS ACTION COMPLAINT

86.    When companies like Disney disregard those protections, they profit from the unlawful exploitation of children's identities and attention to the detriment of both privacy and public trust.

87.    Indeed, there is a market for data like the data collected on the YouTube platform when the "not for kids" notation is selected by Disney. Minor Plaintiffs and Class Members suffered pecuniary losses when their data was collected and shared with third parties in part because of the value of the data itself. Without the freedom to control what becomes of their data, children are unable to maintain the value of their personal data—a consequence they will likely carry the rest of their lives.

88.    The value of children's personal information is clear. For example, when cybercriminals steal such information, like the information Disney enabled to be collected through YouTube, the criminals face huge fines and lengthy prison sentences. Organizations across every sector use and monetize consumer data to increase profits.

89.    And the value of such information as a commodity is measurable. In monetary terms, academic research from institutions such as MIT and Carnegie Mellon has estimated that individual user data can be worth $240 or more per year to advertisers, with children's data commanding a premium due to its potential for early brand capture and influence.[7] Google has recognized the value of user data and even instituted program that would pay users up to $540 a year to allow Google to track their online activities.[8]

---

[7] Acquisti, Allesandro et al., *The Economics of Privacy*, 54 J. ECON. LIT. 442, 444 (2016); *see also* Egelman, Serge et al., *What's the Value of Your Data?*, CARNEGIE MELLON CYLAB (2020), available at https://www.cylab.cmu.edu/news/2020/20/whats-the-value-of-your-data.html.

[8]    *See* Google Device Usage Study, available at https://deviceusagestudy.google/signup/invitecode (last visited October 1, 2025).

90.     Courts, too, have recognized that personal information is extremely valuable in our digital economy. *See, e.g., In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020) ("Neither should the Court ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy. Many companies, like Marriott, collect personal information. Consumers too recognize the value of their personal information and offer it in exchange for goods and services.").

91.     Several companies have products through which they pay consumers for a license to collect or track their data, including Nielsen, HoneyGain, and Caden. Facebook also has paid users to gather data on usage habits. Until 2019, Facebook ran a "Facebook Research" app through which it paid $20 a month for a license to collect browsing history information and other communications from consumers between the ages 13 and 35.

92.     Through its conduct and practices, Disney has unlawfully exploited the personal information of Minor Plaintiffs and Class Members without their permission and without compensating them for the use of their assets.

93.     Minor Plaintiffs and Class Members, through their guardians, had a reasonable expectation of privacy while engaging with Disney's YouTube channels because of societal norms as well as the implementation of laws such as COPPA, which were designed to protect children's privacy.

94.     Users young and old highly value their privacy when online—privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data. For example, one study found that 92% percent of Americans felt that internet

companies "should be required to get their permission before selling or sharing their data."[9]

### H. DISNEY VIOLATED PLAINTIFFS' RIGHTS.

95.    Minor Plaintiffs are citizens of Pennsylvania and were under the age of 13 years old between 2020 and September 2, 2025.

96.    Minor Plaintiffs accessed Disney's channels via the YouTube platform and viewed child-directed content weekly, and at times daily, between 2020 and September 2, 2025.

97.    Upon information and belief, Minor Plaintiffs viewed videos that were clearly directed at children, but that Disney failed to designate as "made for kids." Minor Plaintiffs watched these videos, which included videos involving content from the Cars, Pupstruction, and Mickey Mouse Clubhouse franchises, across several Disney channels on YouTube. As a result, Minor Plaintiffs' data was collected and exploited for targeted behavioral advertising.

98.    Minor Plaintiffs' guardian was never notified that Disney had enabled the collection of her children's personal information and viewing history for the purpose of targeted behavioral advertising.

99.    Minor Plaintiffs' guardian never provided consent of any kind for her children's information to be collected and used for targeted behavioral advertising on the YouTube platform.

100.    Minor Plaintiffs' guardian places significant value in her children's privacy and would not have consented to the collection of her children's data on Disney channels.

---

[9] Katie McInnis, *The Evolution of Consumer Attitudes Toward Online Tracking, 1995-2019*, CONSUMER REPORTS DIGITAL LAB (May 2020), at 36, https://innovation. consumerreports.org/The-Evolution-of-Consumer-Attitudes-Toward-Online-Tracking_5.20.20_FINAL.pdf.

101.   Minor Plaintiffs' guardian would not have permitted her children to access YouTube and Disney's content on YouTube had she known that Disney was not abiding with internet laws designed to protect her children and their personal information.

## V.   CLASS ACTION ALLEGATIONS

102.   Plaintiffs, individually and on behalf of all others similarly situated, brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All natural persons in the United States who, at any time between November 1, 2019, and September 2, 2025, were under 13 years old and watched child-directed content that was uploaded by Disney on YouTube and not marked as "made for kids." (the "Class").

103.   Excluded from the Class are Defendants, their subsidiaries and affiliates, their officers, directors, and members of their officers' and directors' immediate families, any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of those judicial officers' immediate families.

104.   Plaintiffs reserve the right to modify or amend the definition of the proposed Class prior to moving for class certification.

105.   **Numerosity.** The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class Members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to, the YouTube analytics data collected by Defendants

for YouTube uploads on Disney-affiliated channels. Upon information and belief, the Class, at minimum, comprises millions of children and former children.

106. **Commonality.** This action involves questions of law and fact that are common to Plaintiffs and the Class Members. Such common questions include, but are not limited to:

    a. Whether Disney gathered the personal identifying information of Class Members.

    b. Whether Disney gathering the YouTube viewing history and related information for Class Members.

    c. Whether Disney obtained verifiable parental consent before collecting the personal identifying information and/or viewing history of Class Members.

    d. Whether Disney violated Plaintiffs' and Class Members right to privacy.

    e. Whether Plaintiffs and Class members are entitled to relief, including restitution and injunctive relief; and

    f. Whether Plaintiffs and Class members are entitled to damages or other monetary relief, and if so, in what amount.

107. **Typicality.** Plaintiff' claims are typical of the claims of the Class Members. The claims of Plaintiffs and Class Members are based on the same legal theories and arise from the same illegal conduct by Defendants as alleged herein, which caused Plaintiffs and Class Members to suffer the same or similar injuries and/or damages. Plaintiffs' claims are thereby representative of and typical of the claims of all other Class Members.

108. **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class Members that Plaintiffs seek to represent; Plaintiffs have retained counsel competent

and experienced in complex class action litigation; Plaintiffs intend to prosecute this action vigorously; and Plaintiffs' counsel has adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class Members will be fairly and adequately protected and represented by Plaintiffs and Plaintiffs' counsel.

109. **Superiority.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

110. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

111. **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Minor Plaintiffs and each member of the Class. If Defendants breached their duties and released Minor Plaintiffs' and Class Members' personally identifying information, then Minor Plaintiffs and each Class Member suffered damages by that conduct.

112.  **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendants' books and records.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Invasion of Privacy – Intrusion Upon Seclusion
### (On Behalf of Plaintiffs and the Class)

113.  Plaintiffs restate and reallege the factual allegations contained in paragraphs 1 through 112 as if fully set forth herein.

114.  Plaintiffs and Class members have an objective, reasonable expectation of privacy in the online activities of minors and their online communications, including minors' location, personal information, viewing history and browsing activities on YouTube.

115.  Plaintiffs and Class Members did not consent to, authorize, or know about Disney's intrusion at the time it occurred. Plaintiffs and Class Members never agreed that Disney could collect and disclose data regarding their identity, location, viewing history, and other online activity while using internet-connected devices to YouTube and advertisers.

116.  Plaintiffs and Class Members had an objective interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

117.  Disney intentionally intrudes on Plaintiffs' and Class Members' private life, seclusion, or solitude, without consent.  The content on Disney's YouTube channels was clearly and unmistakably directed at children, and Disney was well-aware of the demographic that made up the vast majority of its audience. Yet, Disney

failed to designate this content as "made for kids," thereby enabling the platform and its ad partners to secretly track, profile, and target young viewers for behavioral advertising.

118.    At no time did Plaintiffs nor their guardian ever provide Disney with any form of consent, either written or otherwise, to intrude upon the privacy of their communications and online activity, even though Disney was legally obligated to notify parents' of their data collection and obtain parents' consent to such an intrusive collection under COPPA.

119.    Disney's conduct is highly objectionable and offensive to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy, in particular the right to privacy for minors under the common law and COPPA. The offensiveness of Disney's conduct is demonstrated by consumer surveys, academic studies detailing the harms of tracking children online, centuries of common law, scholarly literature on consumers' reasonable expectations, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and the fines sought by the FTC predicated on Disney's conduct.

120.    Disney's conduct has needlessly harmed Plaintiffs and the Class by capturing intimately personal facts and data in the form of their online communications. This disclosure and loss of privacy and confidentiality has caused Plaintiffs and the Class to experience mental anguish, emotional distress, worry, fear, and other harms.

121.    Further, Disney has improperly profited from its invasion of Plaintiffs' and Class Members' privacy in its use of their data for its lucrative economic value, in particular for behavioral and targeted advertising.

122.   As a direct and proximate result Disney's conduct, Plaintiffs and Class Members were actually and concretely injured.

123.   Plaintiffs and Class Members are therefore entitled to damages, including but not limited to compensatory, punitive, and/or nominal damages, in an amount to be proven at trial, and disgorgement of profits realized by Disney as a result of their intrusion upon Plaintiffs' seclusion.

124.   Disney's conduct is ongoing, and it continues to unlawfully intrude upon, intercept, and disclose the communications of Plaintiffs and Class Members without their consent. Plaintiffs and Class Members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

## SECOND CAUSE OF ACTION

### Trespass to Chattels
### (On Behalf of Plaintiffs and the Class)

125.   Plaintiffs restate and reallege the factual allegations contained in paragraphs 1 through 112 as if fully set forth herein.

126.   Plaintiffs and Class Members have a property interest in their personal information, which is an asset with value that Plaintiffs and Class Members possess.

127.   As a result of Disney's unlawful conduct, Disney unlawfully took possession of and commercially exploited the assets of Minor Plaintiffs and Class Members, including by using their personal information for purposes of targeted behavioral advertising, without their consent or permission, and without compensating them for the use of their assets.

128.   By intentionally choosing to not designate clearly child-directed content as "made for kids" on YouTube, Disney enabled and benefited from the surreptitious placement of tracking tools on children's devices through third-party advertising systems. This conduct was done without notice, authorization, or valid

CLASS ACTION COMPLAINT

parental consent, and was specifically intended to harvest behavioral data from children for advertising and profit.

129.   As a result of the conduct and practices alleged herein, including the unauthorized digital intrusion, Disney's conduct caused harm, in that it damaged, diminished, impaired, interfered with, and/or destroyed the value of the personal information in which Plaintiffs and Class Members have a possessory interest.

130.   Plaintiffs and Class Members are therefore entitled to damages, including but not limited to compensatory, punitive, and/or nominal damages, in an amount to be proven at trial, and disgorgement of profits realized by Disney.

## THIRD CAUSE OF ACTION

### Negligence
### (On Behalf of Plaintiffs and the Class)

131.   Plaintiffs restate and reallege the factual allegations contained in paragraphs 1 through 112 as if fully set forth herein.

132.   Disney owed a duty of care to children who viewed its content to safeguard their privacy and personal information.

133.   This duty of care to children was higher than the duty owed to an ordinary consumer because of children's lack of capacity to appreciate and mitigate risks.

134.   Disney also owed independent duties under state and federal laws, including COPPA, to take reasonable steps to protect the online privacy of children.

135.   Disney breached these duties by negligently, recklessly, and/or knowingly failing to appropriately mark child-directed videos as "made for kids" and therefore failing to prevent the collection and use of children's personal data for targeted advertising purposes.

136.    Disney's breach is particularly egregious because Disney knew or should have known that its content was viewed primarily by children under the age of 13, and that failure to properly designate such content as "made for kids" would result in the collection of young viewers' personal information, including persistent identifiers such as cookies and IP addresses, without verifiable parental consent.

137.    Disney's actions also violate its duties under COPPA.

138.    Disney's violation of COPPA is particularly egregious as YouTube notified Disney of its obligations to comply with COPPA as early as 2019, and explicitly informed Disney that it was failing to comply with COPPA as early as 2020.

139.    Minor Plaintiffs and Class Members are "children" within the class of persons Section 5 of the FTC Act was intended to protect.

140.    Moreover, the harm that has occurred is the type of harm that COPPA was intended to guard against. Indeed, the FTC has already pursued an enforcement action against Disney to punish Disney for the same harm suffered by Minor Plaintiffs and Class Members.

141.    Disney's violation of COPPA therefore also constitutes negligence *per se*.

142.    As a direct and proximate result of Disney's negligence, Plaintiffs and Class Members have suffered injuries, including the collection, exposure, and exploitation of their personal information, including their viewing history and preferences, as well as additional injuries identified above.

143.    Plaintiffs and Class Members are therefore entitled to damages, including but not limited to compensatory, punitive, and/or nominal damages, in an amount to be proven at trial, and disgorgement of profits realized by Disney as a result of its negligence.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FOURTH CAUSE OF ACTION

### Unjust Enrichment
### (On Behalf of Plaintiffs and the Class)

144.   Plaintiffs restate and reallege the factual allegations contained in paragraphs 1 through 112 as if fully set forth herein.

145.   Disney received a benefit from their collection and use of Minor Plaintiffs' and Class Members' data and personal information, including the ability to deploy targeted advertising to minor children in violation of state and federal law.

146.   Disney's collection and use of Minor Plaintiffs' and Class Members' personally identifiable information yielded significant monetary benefit to Disney, as Disney directly profited from its arrangement with YouTube to earn advertising revenue and through enhanced audience insights used to further its commercial interests.

147.   Disney enriched themselves through advertising targeted to Minor Plaintiffs and Class Members, among various means. Disney's enrichment came at the direct expense of Plaintiffs and Class Members, whose privacy was compromised and whose personal data was wrongfully used to generate corporate profit.

148.   As set forth above, Disney's ability to engage in targeted and behavioral advertising allowed it to reap significantly higher advertising revenue than if it was only able to engage in contextual advertising on its videos; however, if Disney had properly marked its videos as "made for kids," it could not have been able to engage in behavioral advertising.

149.   Disney's profiting from its unlawful conduct is therefore unjust and unconscionable to Plaintiffs and Class Members, as Disney was only able to profit from Minor Plaintiffs and Class Members because their privacy was violated and

CLASS ACTION COMPLAINT

their personal information collected in violation of state and federal law in a way that would be unconscionable and highly offensive to a reasonable person.

150.   Plaintiffs and Class Members are without an adequate remedy at law for Disney's unjust and unconscionable conduct.

151.   As a direct and proximate result of Disney's conduct, Plaintiffs and Class Members have suffered injuries, including those identified above.

152.   Plaintiffs and Class Members are entitled to restitution and/or damages from Disney and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Disney from its wrongful conduct.

## FIFTH CAUSE OF ACTION

### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710 *et seq.*
### (On Behalf of Plaintiffs and the Class)

153.   Plaintiffs restate and reallege the factual allegations contained in paragraphs 1 through 111 as if fully set forth herein.

154.   The Video Privacy Protection Act ("VPPA") provides that "a video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer shall be liable to the aggrieved person for the relief provided in subsection (d)." 18 U.S.C. § 2710(b)(1).

155.   "Personally-identifiable information" ("PII") is defined by the VPPA to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The definition's usage of the word "includes" means that a more expansive reading of the term was expressly contemplated. This definition therefore encompasses any "personally identifiable information," which is defined by the

National Institute of Standards and Technology ("NIST") to include "any information that can be used to distinguish or trace an individual's identity."[10]

156.   A "video tape service provider" is defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of pre-recorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

157.   "Consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video service provider." 18 U.S.C. § 2710(a)(1).

158.   Disney is a "video tape service provider" because it creates, hosts, and delivers thousands of videos via YouTube, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of pre-recorded video cassette tapes or similar audio-visual materials." 18 U.S.C. § 2710(a)(4).

159.   Minor Plaintiffs and Class Members are each a "consumer" as defined by the VPPA because Minor Plaintiffs watched videos that Disney had uploaded to their various channels on YouTube and subscribed to various Disney-managed channels on YouTube. 18 U.S.C. § 2710(a)(1). Under the VPPA, Minor Plaintiffs were each a "renter" and/or "subscriber of goods or services from a video tape service provider." *Id.*

160.   Disney illegally shared Minor Plaintiffs' and Class Members' personally identifiable information ("PII") under the VPPA.

161.   Minor Plaintiffs and Class Members viewed numerous video clips across Disney's YouTube channels that Disney improperly identified as "not made for kids." During these occasions, Disney knowingly sent Minor Plaintiffs' and

---

[10]   NIST Guide to Protecting the Confidentiality of Personally Identifiable Information (PII), http://csrc.nist.gov/publications/nistpubs/800-122/sp800-122.pdf (last accessed October 1, 2025).

Class Members' PII—including identifying details about each Minor Plaintiff and Class Member, and information identifying the videos that they viewed and their content preferences and interests—to YouTube to build an advertising profile for Minor Plaintiffs.

162.    Minor Plaintiffs' and Class Members' PII, including their viewing history, would not have been illegally shared but for Disney's knowing marking of these videos as "not made for kids," as YouTube was only able to collect this data and PII on videos marked by the content creator as "not made for kids."

163.    Disney's providing of Minor Plaintiffs' and Class Members' PII to YouTube and YouTube's advertisers constitutes "knowing[] disclosures" of Plaintiffs' "personally identifiable information" to a person in violation of the VPPA. 18 U.S.C. § 2710(a)(1).

164.    At no time did Minor Plaintiffs or Class Members nor their guardians ever provide Disney with any form of consent, either written or otherwise, to disclose their PII to YouTube and advertisers.

165.    Nor were Disney's disclosures of Minor Plaintiffs' and Class Members' information made in the "ordinary course of business" as the term is defined by the VPPA, under which "the term 'ordinary course of business' means only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2).

166.    As a result of Disney's wrongful disclosures, Plaintiffs and the Class have had their statutorily defined right to privacy violated. Plaintiffs seek an injunction to prohibit Disney from releasing their PII and the Class's PII in the future, as well as the maximum statutory and punitive damages available under the VPPA, 18 U.S.C. § 2710(c), and all other damages and remedies available under the law.

## SIXTH CAUSE OF ACTION

### Violation of the Federal Wiretap Act
### 18 U.S.C. § 2510 *et seq.*
### (On Behalf of Plaintiffs and the Class)

167. Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 112 as if fully set forth herein.

168. Codified under 18 U.S.C. § 2510 *et seq.*, the Federal Wiretap Act prohibits the interception of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication.

169. The Wiretap Act was amended in 1986 through the Electronic Communications Privacy Act ("ECPA") to provide a private right of action for private intrusions as though they were government intrusions, and to address Congress' concerns that technological advancements in computers and other methods of communication were rendering the Wiretap Act out-of-date.[11]

170. The Wiretap Act now confers a civil private right of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a).

171. The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

172. The Wiretap Act defines "contents" as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

173. The Wiretap Act defines "person" as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual,

---

[11] Senate Rep. No. 99-541, at 2 (1986).

partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

174.   The Wiretap Act defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

175.   Each Defendant is a person for the purposes of the Wiretap Act.

176.   YouTube's user tracking tools that Disney allows YouTube to deploy on videos not marked as "made for kids" constitute a "device or apparatus which can be used to intercept a wire, oral, or electronic communication." 18 U.S.C. § 2510(5).

177.   The confidential communications Minor Plaintiffs and members of the Class had with Disney's channels and videos, in the form of their clicks, likes, comments, subscription actions, the videos they chose to watch, other browsing information, and PII, that were intercepted by YouTube and its advertisers were "electronic communications" under 18 U.S.C. § 2510(12).

178.   Plaintiffs and members of the Class had a reasonable expectation of privacy in their electronic communications in the form of their clicks, likes, comments, subscription actions, viewing history and their PII. This expectation is reasonable in light of Congress' determination that children have a privacy interest in their online activities and personal information online, as codified in COPPA.

179.   Plaintiffs and members of the Class reasonably expected that YouTube and third-party advertisers were not intercepting, recording, or disclosing their electronic communications to build user profiles for targeted advertising.

180.   At all times relevant to this Complaint, Disney's conduct was knowing, willful, and intentional, as Disney is a sophisticated party with full knowledge regarding the functionality of YouTube's data collection and tracking tools, and was

explicitly informed by YouTube that Disney was obligated to mark children-directed videos as "made for kids" in order to prevent the interception and sharing of child users' private communications with YouTube and third party advertisers in real time.

181.   At no time did Minor Plaintiffs nor their guardian ever provide Disney with any form of consent, either written or otherwise, to facilitate YouTube's interception of their communications.

182.   Moreover, while the ECPA allows a single party to consent to the interception of an electronic communication, single party consent is only acceptable where the communication is not "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. §2511(2)(d). Disney's conduct falls within this crime-tort exception, as the FTC has already found that Disney's interception of Plaintiffs' communications violated COPPA.

183.   As a result of Disney's wrongful conduct, Plaintiffs and the Class have had their statutorily defined right to privacy violated through the unauthorized interception, disclosure, and use of their confidential communications in violation of 18 U.S.C. § 2520. Plaintiffs seek an injunction to prohibit Disney's continued violations of the Wiretap Act, as well as the maximum actual, statutory, and punitive damages available under the Wiretap Act.

## SEVENTH CAUSE OF ACTION

**Violation of the Pennsylvania Wiretap Act**
**18 Pa. Cons. Stat. § 5701 *et seq.***
**(On Behalf of Plaintiffs and the Class)**

184.   Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 112 as if fully set forth herein.

185.   The Pennsylvania Wiretap Act prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. § 5703.

186.   Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Pennsylvania Wiretap Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(a).

187.   "Intercept" is defined as any "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Cons. Stat. § 5702.

188.   "Contents" is defined as "used with respect to any wire, electronic or oral communication, is any information concerning the substance, purport, or meaning of that communication." 18 Pa. Cons. Stat. § 5702.

189.   "Person" is defined as "any individual, partnership, association, joint stock company, trust or corporation." 18 Pa. Cons. Stat. § 5702.

190.   "Electronic Communication" is defined as "[a]ny transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." 18 Pa. Cons. Stat. § 5702.

191.   TWDC and Disney Worldwide are each a "person" under the Pennsylvania Wiretap Act because they are each a corporation.

192.   Disney Entertainment is a "person" under the Pennsylvania Wiretap Act because it is a partnership.

193.   YouTube's user tracking tools that Disney allows YouTube to deploy on videos not marked as "made for kids" constitute a "device" used for the "acquisition of the contents of any wire, electronic, or oral communication" within the meaning of the Pennsylvania Wiretap Act.

194.   The confidential communications Minor Plaintiffs and members of the Class had with Disney's channels and videos, in the form of their clicks, likes, comments, subscription actions, the videos they chose to watch, other browsing information, and PII, that were intercepted by YouTube and its advertisers constitute "contents" of electronic communication[s]" within the meaning of the Pennsylvania Wiretap Act.

195.   Minor Plaintiffs and members of the Class, as minors, and their guardians, reasonably expected that YouTube and third-party advertisers were not intercepting, recording, or disclosing the contents of their electronic communications, including their viewing history and other personal information, to build user profiles for targeted advertising. This expectation is reasonable in light of societal norms alleged above and Congress' determination that children have a privacy interest in their online activities and personal information online, as codified in COPPA.

196.   At all times relevant to this Complaint, Disney's enabling of YouTube's interception was knowing, willful, and intentional, as Disney is a sophisticated party with full knowledge regarding the functionality of YouTube's data collection and tracking tools, and was explicitly informed by YouTube that Disney was obligated to mark children-directed videos as "made for kids" in order

37

to prevent the interception and sharing of child users' private communications with YouTube and third-party advertisers in real time.

197.   On information and belief, Minor Plaintiff's and Class Members' electronic communications are intercepted contemporaneously with their transmission.

198.   At no time did Minor Plaintiffs nor their guardian provide Disney with any form of consent, either written or otherwise, to allow YouTube's interception of their communications.

199.   As a result of Disney's wrongful conduct, Plaintiffs and the Class have had their statutorily defined right to privacy violated through the unauthorized interception, disclosure, and use of their confidential communications in violation of the Pennsylvania Wiretap Act. Plaintiffs seek an injunction to prohibit Disney's continued violations of the Pennsylvania Wiretap Act, as well as the maximum actual, statutory, and punitive damages available under 18 Pa. Cons. Stat. 5725(a), including: (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.

## VII.   PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

A.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.   For damages in an amount to be determined by the trier of fact;

D.    For an order of restitution and all other forms of equitable monetary relief;

E.    Declaratory and injunctive relief as described herein;

F.    Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

G.    Awarding pre- and post-judgment interest on any amounts awarded; and

H.    Awarding such other and further relief as may be just and proper.

## VIII. JURY TRIAL DEMANDED

A jury trial is demanded on all claims so triable.

Dated: October 2, 2025          Respectfully submitted,

*/s/ Tiffine E. Malamphy*
Tiffine E. Malamphy (CA SBN 312239)
**LYNCH CARPENTER, LLP**
117 E. Colorado Blvd., Suite 600
Pasadena, CA 91105
Tel:    (213) 723-0707
Fax:    (858) 313-1850
tiffine@lcllp.com

Connor P. Hayes (*pro hac vice* forthcoming)
**LYNCH CARPENTER, LLP**
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone:    (412) 322-9243
Facsimile:    (412) 231-0246
connorh@lcllp.com

***Attorneys for Plaintiff and the Proposed Class***

39